IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES J. GOBLE, | ) | CASE NO. 1:10 CV 1661 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action under 42 U.S.C. § 405(g) by Charles J. Goble seeking review of the final decision of the Commissioner of the Social Security Administration denying Goble's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).[2] The Commissioner, in response, seeks affirmation of the denial of benefits.[3] Both parties have briefed their respective positions,[4] with Goble filing

---

[1] The matter was referred to me by United States District Judge Benita Y. Pearson pursuant to Local Rule 72.2 by non-document order dated February 10, 2010.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 12 (Goble's merit brief); ECF # 19 (Commissioner's merit brief).

a reply,[5] and the parties have supplemented those briefs[6] as directed.[7] For the reasons that follow, I will recommend affirming the Commissioner's decision to deny  benefits.

## Facts

### A.    Background

After unsuccessfully seeking benefits in 2005,[8] Goble filed an application for Supplemental Security Income (SSI) benefits in March 2007, alleging that he had been disabled since August 2005.[9] Following a hearing where Goble did not appear, the administrative law judge (ALJ) denied Goble's application.[10]  When the Appeals Council denied Goble's request for review, the denial became the final decision of the Commissioner.

### B.    ALJ decision

The findings of the ALJ are organized around the evidence as viewed under the five-step sequential evaluation process set forth in the applicable regulations.[11]

---

[5] ECF # 22.

[6] ECF # 20 (Commissioner's supplemental brief); ECF # 21 (Goble's addendum to brief).

[7] ECF # 18.

[8] *See*, ECF # 12 at 1-2.  The application and resulting adjudication here are not included in this administrative record.

[9] Tr. 63.

[10] *Id*. at 9-23.

[11] 20 CFR 416.920(a).

Initially, at step one, the ALJ concluded that he could not determine from the evidence whether Goble had engaged in substantial gainful activity since the date he filed the application for benefits.[12] That said, the ALJ nevertheless elected to assume "for the sake of argument" that Goble had engaged in substantial gainful employment since the date the application was filed.[13]  Based on such an assumption at step one, the ALJ then chose to proceed "through the remaining steps in the sequential order of evaluation."[14]

At step two, the ALJ found that Goble has two severe impairments: (1) lumbosacral spondylosis without myleopathy, and (2) generalized anxiety.[15] In this regard, the ALJ also observed that another possible impairment – hypertension – was found to be "stable" and "well-controlled" by Goble's treating physician, and so placed "no more than minimal limitations" on Goble's ability to perform work-related activities.[16]

In his evaluation at the third step, the ALJ concluded that neither of Goble's severe impairments – individually or in combination – met or medically equaled a listed impairment, with emphasis on listings 1.04 and 12.06.[17] In arriving at this determination, the ALJ noted that the non-examining state agency reviewers reached the same conclusion.[18] Specifically,

---

[12] Tr. 14.

[13] *Id*.

[14] *Id*.

[15] *Id*.

[16] *Id*. at 15.

[17] *Id*.

[18] *Id*.

as to the anxiety impairment, the ALJ evaluated the evidence under the paragraph B criteria and found that the anxiety imposed only "mild restrictions" with activities of daily living and in maintaining social functions.[19] The ALJ found that this same impairment imposed "moderate limitations" with maintaining concentration, persistence and pace.[20] Further, the ALJ found that the evidence showed that Goble "has not experienced any episodes of decomposition of extended duration."[21]

Accordingly, the ALJ determined that the paragraph B criteria were not satisfied.[22] Similarly, the ALJ found that the paragraph C criteria likewise were not met.[23]

After the step three analysis, the ALJ made a residual functional capacity assessment. In that respect, the ALJ determined that the most Goble could do in light of the cumulative effects of his impairments was to "perform a range of light work."[24] The ALJ stated that while Goble could not climb ladders, ropes or scaffolds and can only occasionally climb ramps and stairs or stoop, he can sit for six hours and stand and/ or walk for six hours in a

---

[19] *Id*.

[20] *Id*.

[21] *Id*.

[22] *Id*.

[23] *Id.*

[24] *Id*. at 16, citing 20 CFR 416.967(b).

normal workday.[25] He also found that Goble was "limited to tasks that can be learned in a short demonstration or within 30 days."[26]

In the step four analysis, the ALJ found that Goble had done past relevant work as a car mechanic, and that his residual functional capacity would preclude future performance of such work.[27] Thus, the ALJ concluded, Goble is unable to perform past relevant work.[28]

At step five, the ALJ found that given Goble's residual functional capacity and his vocational profile (which included the facts that Goble was only 43 years old, had a limited education, but could communicate in English),[29] jobs existed in significant numbers in the national economy that Goble could perform.[30] Therefore, the ALJ determined that Goble was not disabled.[31]

## C.    Goble's arguments

Here, Goble essentially raises five arguments:

(1)    <u>The ALJ's finding at step one is ambiguous or inconsistent and thus not reviewable.</u>  On one hand, Goble contends, the ALJ states that "[i]t cannot be determined" from the record whether Goble engaged in substantial gainful employment since the

---

[25] *Id*.

[26] *Id.*

[27] *Id*. at 21.

[28] *Id*.

[29] *Id*. at 21-22.

[30] *Id*. at 22.

[31] *Id.*

application date.[32] On the other hand, the ALJ proceeded to beyond step one "for the sake of argument," and not because the ALJ made a necessary finding.[33] Such inconsistent or ambiguous reasoning, Goble maintains, makes the decision here unreviewable.[34]

(2)  <u>The ALJ's decision of no disability at step five required the testimony of a vocational expert.</u>[35] Essentially, Goble argues first that because the ALJ did not determine in the residual functional capacity finding that Goble could perform the full range of light work, he therefore could not rely exclusively on the Grid rule for light work to direct a finding of no disability at step five.[36] In such a circumstance, Goble contends that because the ALJ's residual functional capacity finding included the limiting physical factor that Goble could only occasionally climb ramps and stairs, testimony of a vocational expert was required before making a final finding as to disability.[37]

(3)  <u>Substantial evidence does not support the residual functional capacity finding that Goble was not restricted to jobs requiring only one- and two-step instructions.</u>[38] Here, Goble maintains that the ALJ erroneously rejected the opinions of one examining physician and two non-examining physicians to the effect that Goble could follow only one- and two- step job

---

[32] ECF # 12 at 6.

[33] *Id*.

[34] *Id*.

[35] *Id*. at 8.

[36] *Id*., citing Grid Rule 202.18.

[37] *Id*. at 9-11.

[38] *Id*. at 11-16,

instructions,[39] or that the ALJ should have obtained clarification of the opinion of the examining physician in this regard.[40] In either event, Goble contends that the alleged errors as to Goble's capacity to follow job instructions were not harmless because such a restriction would have been significant and so would have required the testimony of a vocational expert.[41]

(4) Substantial evidence does not support the ALJ's determination that Goble was not impaired by panic attacks.[42] Specifically, Goble argues that contrary to the ALJ's findings, the record does show that he reported having panic attacks prior to November 2008; that he did receive emergency care for panic attacks and took medication for them; and that the silence on this subject by certain physicians lead to their consequent understatement of Goble's mental limitations.[43]

(5) Substantial evidence does not support the ALJ's findings in the residual functional capacity assessment as to Goble's physical limitations.[44]  In this respect, Goble points to differences between the opinion of Dr. William Damm, Goble's treating physician, as to Goble's physical limitations and the ultimate findings of the ALJ in the same categories in

---

[39] *Id.* at 12- 15.

[40] *Id*. at 15.

[41] *Id*. at 15-16.

[42] *Id*. at 16-17.

[43] *Id*.

[44] *Id*. at 18-20.

the residual functional capacity analysis.[45] Goble maintains that the ALJ was not justified in finding that Dr. Damm's opinions were not supported in the record simply because Dr. Damm did not include any specific restrictions in Goble's treatment notes.[46] Such a "negative inference," Goble asserts, should be used only in narrow circumstances and not, as here, when the physician did not offer opinions as to functional limitations outside of the context of a disability examination.[47] Rather, Goble states, before making any assumption as to the reasons for the lack of functional limitation findings, the ALJ should have asked the treating physician why such specific findings were absent from the treatment notes.[48]

## D.    Commissioner's position

The Commissioner maintains essentially three contrary positions to the arguments raised above by Goble: (1) that substantial evidence supports the ALJ's assessment of Goble's physical condition in the residual functional capacity assessment;[49] (2) that substantial evidence similarly supports the findings as to Goble's mental impairments;[50] and (3) that the ALJ acted within his discretion in not calling a vocational expert before arriving at the no disability determination is step five.[51]

---

[45] *Id*. at 19.

[46] *Id.*

[47] *Id*.

[48] *Id.* at 20.

[49] ECF # 19 at 9-13.

[50] *Id*. at 13-17.

[51] *Id*. at 17-20.

As to Goble's physical condition, which the Commissioner contends largely involve determinations as to the credibility of Goble's own statements as to the intensity, persistence and limiting effects of pain,[52] the Commissioner here argues that the ALJ findings were supported in the first instance by mostly normal clinical findings or, at worst, nothing more than tenderness and minimally decreased range of motion.[53] Further, the Commissioner contends that the ALJ "reasonably found" that Goble's own assertions in this regard did not conform to the medical evidence of sporadic, conservative treatment and Goble's own noncompliance with medical advice.[54] Finally, the Commissioner maintains that the record "sets forth a number of reasons" why the opinion of Dr. Damm, the treating physician, was not followed.[55]

Concerning the findings as to Goble's mental impairments, the Commissioner similarly argues that the ALJ's conclusions were supported by substantial evidence.  First, the Commissioner asserts that the record shows that Goble made only intermittent reports of anxiety, and that he was never consistently on medication for such a condition.[56] Further, the Commissioner notes that Goble was able to engage in activities, such as fishing, driving, shopping and caring for his children, that demonstrate an ability to carry out more than one

---

[52] *Id*. at 9.

[53] *Id*. at 9-10.

[54] *Id*. at 10-11.

[55] *Id*. at 12-13.

[56] *Id*. at 13-14.

or two-step tasks.[57] Finally, the Commissioner observes that the medical treatment notes "indicate few mental status abnormalities."[58] Thus, the Commissioner concludes, the ALJ's finding in the residual functional capacity assessment that Goble was limited to tasks that can be learned in a short demonstration or within 30 days was "quite generous" and otherwise supported by substantial evidence of record.[59]

     As to the argument that testimony of a vocational expert was required, the Commissioner initially agrees with Goble that where there are both exertional and nonexertional limitations, as here, the Grid provides a framework, but is not dispositive, if the nonexertional limitations do not significantly erode the range of remaining work.[60] However, the Commissioner further argues that the determination as to whether a nonexertional limitation significantly diminishes the occupational base at a given level of exertion can be made with or without a vocational expert, such decision being within the discretion of the ALJ.[61] Accordingly, the Commissioner contends that because Goble's limitation as to occasional climbing of ramps and stairs does not significantly erode the occupational base of light work, the ALJ was reasonable in not utilizing a vocational expert.[62]

---

[57] *Id.* at 14.

[58] *Id.*

[59] *Id.* at 16-17.

[60] *Id*. at 18.

[61] *Id*.

[62] *Id*. at 18-19.

-10-

In addition, the Commissioner maintains that any error here was harmless.  In that regard, the Commissioner states that even if all Goble's nonexertional limitations had been credited, the result would have been a finding that Goble was restricted to sedentary work, and would thus have also produced a finding that he was not disabled.[63] Further, with regards to whether Goble should have been limited to one- and two-step tasks,  the Commissioner contends that even with that restriction Goble – who was not retarded or of limited intelligence – could still have done light work.  As such, there would still have been numerous jobs in substantial number that Goble could have done in the national economy.[64]

## Analysis

### 1.    Issues to be decided

As distilled from the above arguments by both Goble and the Commissioner, this case presents three major issues for decision:

* What is the effect of the ALJ's assumption at step one?

* Are the ALJ's findings supported by substantial evidence?

* Did the ALJ err in failing to obtain the testimony of a vocational expert before determining that Goble was not disabled at step five?

### 2.    The ALJ's assumption that Goble met his burden at step one was not error

As noted, Goble argues that because the ALJ "assumed," but did not conclusively find, that he had not engaged in substantial gainful employment since the filing of the application,

---

[63] *Id*. at 19.

[64] *Id*. at 19-20.

-11-

the ALJ therefore rendered a non-reviewable decision requiring remand.[65] In that regard, I note first that it I have not found a single instance where an assumption in favor of the claimant at this step by the ALJ resulted in any negative action by the reviewing court attributable to that assumption.[66]

Indeed, inasmuch as it is well-recognized that the claimant bears the burden at step one of proving that he or she has not engaged in substantial gainful employment within the relevant period,[67] a determination by the ALJ not to require further proof from the claimant on this issue, but to assume the matter established, effectively operates not as an evidentiary finding rooted in substantial evidence, but in the nature of a waiver of the requirement that the claimant meet his or her burden of proof with substantial evidence. As such, it is difficult to understand Goble's position that the Commissioner's waiver in his benefit should somehow be set aside because the reasons given for it are purportedly not sufficiently well-articulated to be reviewable or are otherwise not supported by substantial evidence.[68]

---

[65] ECF # 12 at 5-7.

[66] *See, Ochs v. Commissioner*, 187 Fed. Appx. 186, 188 (3d Cir. 2006); *Miracle v. Astrue*, 2009 WL 5066879 at *15 (M.D. Tenn. Dec. 21, 2009); *Pequero v. Barnhart*, 2006 WL 2570607 at *3 (S,D.N.Y. Sept. 6, 2006).

[67] *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Jones v. Commissioner,* 336 F.3d 469, 474 (6th Cir. 2003).

[68] Understood as a waiver, Goble has not shown under what circumstances a party benefitting from the waiver may obtain review.

Accordingly, I do not recommend that the Court find that the ALJ's effective waiver of Goble's step one burden is either not supported by substantial evidence[69] or that it is non-reviewable.

**3.     The ALJ's findings are supported by substantial evidence.**

    *a.     Standard of review*

As the Sixth Circuit has stated, review of the Commissioner's decisions "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."[70] This standard requires the reviewing court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept  as adequate to support a conclusion."[71] This means that the Commissioner's decision must be affirmed if supported by substantial evidence even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence.[72] An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."[73]

---

[69] Goble made no showing that a waiver needs to be supported by substantial evidence.

[70] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir, 2010)(citation omitted).

[71] *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citation omitted).

[72] *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

[73] *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)(citation omitted).

The Commissioner has elected to impose certain standards on the use of evidence from treating medical sources.[74]  As such, the Commissioner has mandated that the ALJ "will" give a treating source's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."[75] If, alternatively, the ALJ decides not to give controlling weight to the opinion of a treating source, various factors must be balanced to determine what weight to give that opinion.[76]

In addition, the Commissioner has imposed a duty on the ALJ to "always give good reasons in [the] notice of our determination or decision for the weight we give [a] treating source's opinion."[77] Those "good reasons" must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating sources medical opinion and the reasons for that weight."[78] As the Sixth Circuit has emphasized, this requirement "is not simply a formality; it is to safeguard the claimant's procedural rights."[79]

---

[74] 20 C.F.R. § 404.1502.

[75] 20 C.F.R. § 404. 1527(d)(2).

[76] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)(citing 20 C.F.R. § 404.1527(d)(2)).

[77] 20 C.F.R. § 404.1527(d)(2).

[78] Soc. Sec. Rule No. 96-2p, 1996 SSR LEXIS 9 at * 12 (Soc. Sec. Admin. July 2, 1996).

[79] *Cole v. Astrue*, __ F.3d __, Case No. 09-4309 at 7 (6th Cir. Sept. 22, 2011).

-14-

### b.     *Application of standard*

The arguments over  the ALJ's findings center on whether the ALJ properly determined: (1) that Goble was not restricted to one- or two-step job instructions; (2) that he his anxiety, panic attacks and pain "do not preclude all levels of basic work-related activities;"[80] and (3) that Goble's physical limitations should be different than those stated by Dr. Damm, the treating physician.

### i.     One- or two-step instructions

First, as to the finding that Goble is not limited to jobs with one- or two-step instructions, Goble, as noted above, observes that such a limitation was imposed by an examining source and two reviewing sources and that it was error by the ALJ to reject those opinions.[81]  However, the Commissioner argues that the ALJ gave adequate reasons for giving less than full weight to the opinions of the consultive psychologist, Dr. Smith, and the state agency psychologist, Dr. Tischler.[82]

In the case of Dr. Smith, Goble places emphasis on the fact that Dr. Smith's opinion as to one- or two-step instructions was founded in part on objective results of a mental status examination wherein Goble manifested some limitations.[83] Specifically, while counting from

---

[80] Tr. at 21.

[81] ECF # 12 at 12-14.

[82] ECF # 19 at 16.  The third non-examining source, Dr. Meyer, adopted the opinion of Dr. Tischler.

[83] ECF # 12 at 13.

one to 40 by threes in 12 seconds, Goble made one mistake.[84] Similarly, on the Digit Span he could remember eight digits forward, but only three digits back.[85] Goble argues that because these results constitute objective findings underpinning Dr. Smith's opinion, the ALJ's failure to specifically discuss these findings necessarily means that the ALJ did not properly weigh that opinion.[86]

The Commissioner, by response, asserts that these facts constitute merely a few mathematical errors made during an otherwise normal examination.[87] Moreover,  the Commissioner contends that the ALJ as reasonable in discounting Dr. Smith's opinion for being partially based on Goble's subjective complaints of back pain and nervousness, as well as being phrased in qualifying and ambiguous words.[88]

As to the opinion of Dr. Tsichler, the ALJ specifically discounted the finding of the reviewing source concerning a limitation to one- and two-step instructions by noting that Goble's daily activities of shopping independently and taking care of children do not support such a limitation.[89]

---

[84] *Id*.

[85] *Id.*

[86] *Id.*

[87] ECF # 19 at 15.

[88] *Id*.

[89] Tr. at 20

On this component of the ALJ's decision, I recommend finding that it was supported by substantial evidence.  In particular, I note first, as did the ALJ, that Dr. Smith's opinions in this regard are largely phrased as speculation concerning what Goble "may" have difficulty with.[90]Further, Dr. Smith's specific concern for limited instructions is expressly linked to Goble's complaints of back pain[91] – complaints which the ALJ found not credible, inconsistent and out of proportion with the medical evidence.[92] In addition, as the ALJ also observed, such a limitation by Dr. Smith is not consistent with the treatment notes over the entire record which do indicate "few mental status abnormalities."[93] Finally, as to Dr. Tschler, the ALJ also grounded his rejection of the specific limitation proposed by the reviewing source by pointing to its inconsistency with other evidence of record.[94]

Bearing in mind the substantial evidence standard articulated above,  I recommend finding that the ALJ's findings on this point are supported by substantial evidence.

### ii.     Panic attacks, anxiety and pain

Similar to the arguments concerning the limitation concerning instructions, Goble contends that the ALJ overlooked or misstated evidence concerning Goble's panic attacks.[95]

---

[90] *Id.*

[91] *Id*.

[92] Tr. at 19.

[93] *Id*. at 20.

[94] *Id.*

[95] ECF # 12 at 17.

-17-

I recommend finding that the ALJ's conclusions here – that certain limitations exist, but do not preclude all levels of basic work related activity – are supported by substantial evidence.

In that regard, I note that while the ALJ has recounted the evidence such that he does acknowledge the medical reality, he is also aware of the limits of such an acknowledgment. Notwithstanding Goble's complaints, the record discloses conservative treatment for the complaints of anxiety which did not include a referral to a psychiatrist by Dr. Damm, Goble's treating physician.[96] Further, the record, as discussed by the ALJ, also discloses Goble was regularly able to perform a wide range of activities inconsistent with Goble's claims regarding anxiety and panic attacks.[97] While Goble argues strenuously that the ALJ made several factual errors fatal to the final finding such as misstating when Goble first reported panic attacks and whether he ever received emergency care for such an attack,[98] even assuming that Goble is correct,[99] there is no evidence that these errors were material.[100]

Specifically, the ALJ's determination concerning panic attacks and anxiety rests on his findings that Goble was not receiving ongoing mental health treatment and that Goble's

---

[96] Tr. at 19.

[97] *Id*. at 20.

[98] ECF # 12 at 16.

[99] *See,* ECF # 19 at 16-17 (*e.g*., Goble "had" a panic attack in the emergency room while otherwise exhibiting normal mood and affect, but was not there "because" of a panic attack).

[100] *See, id.* at 17.

-18-

activities are not consistent with debilitating panic attacks or anxiety. As such, I recommend finding that the ALJ's decision is supported by substantial evidence.

### iii.  Differences in physical limitations between ALJ and Dr. Damm

As noted, Goble maintains that the ALJ had no good reason for diminishing the weight given to treating physician Dr. Damm's opinions as to Goble's physical limitations.[101] In particular, Goble argues that the ALJ should not have relied on a "negative inference" from the lack of any specific physical restrictions in Dr. Damm's treatment notes.[102]

However, as stated by the Commissioner, such an argument "mischaracterizes" the reasons for the ALJ reducing the weight given to Dr. Damm's opinions.[103] Rather, as applies specifically to the physical limitations findings, the ALJ gave Dr. Damm's opinion as to Goble's physical limitations "little weight" for a number of reasons: (1) inconsistency with the overall record; (2) not supported by objective testing which does not show any spinal abnormality requiring surgery; (3) not supported by "clinical signs," which are "negative for any significant neurologic abnormalities;" (4) unsupported by a "relatively conservative" treatment history; and only then (5) because it was not supported by any treatment notes placing actual restrictions on Goble's activities.[104]

---

[101] ECF # 12 at 18-19.

[102] *Id*. at 19.

[103] ECF # 12 at 12.

[104] Tr. at 21.

Based on the foregoing, I recommend finding that the ALJ's determination in this respect is supported by substantial evidence.  Consistent with the requirements of *Wilson*, the ALJ here clearly articulated the reasons for not adopting the opinions of the treating physician as to any physical limitations, and further grounded his eventual finding in Goble's own daily activities.[105]  As such, I recommend that the finding is supported by substantial evidence.

**4.    *The decision not to obtain the testimony of a vocational expert in this case was error*.**

In this case, the Commissioner argues that the ALJ had the discretion to obtain the testimony of a vocational expert because the nonexertional limitations on Goble, as well as the limitation as to climbing of ramps and stairs, had little to no effect on the occupational base of unskilled light work.[106] Moreover, the Commissioner maintains, even if Goble would be limited to sedentary work due to his difficulty walking up and down stairs, the Medical-Vocational Guidelines would still have supported a finding that he was not disabled.[107]

As noted, in this case the ALJ found that Goble has some physical restrictions that preclude climbing ladders, ropes and scaffolds, and limit him to "occasionally" climbing ramps and stairs.[108] Further, the ALJ found Goble has the mental restriction of being limited

---

[105] *Id.*

[106] ECF # 19 at 18-19.

[107] *Id*. at 19.

[108] Tr. at 16

-20-

to tasks that can be learned in a short demonstration or within 30 days.[109] Finally, the ALJ made these restrictions within the context finding Goble being able "to perform a range" of light work.[110]

The Commissioner implicitly concedes that neither SSR 83-14 nor SSR 85-15 directly control in the present case, but are merely "instructive" as to whether Goble's restrictions do or do not significantly diminish the base of work available.[111] However, as noted, the Commissioner ultimately contends that even if Goble had been restricted to sedentary work, he would still necessarily be found not disabled without the need for the testimony of a vocational expert.

In that regard I note first, as did the ALJ here,[112] that Goble's physical restrictions as to ascending and descending scaffolding, poles and ropes "have very little effect on the unskilled light occupation base."[113] Moreover, Goble's restriction to occupations requiring no more than a short demonstration to learn further conforms to the rubric for unskilled work which defines such work as performing "simple duties that can be learned on the job in a short period of time."[114]

---

[109] *Id.*

[110] *Id.*

[111] ECF # 19 at 19.

[112] Tr. at 22.

[113] SSR 83-14, 1983 WL 31254, at * 4.

[114] 20 C.F.R. §§ 404.1568(a), 416.968(a).

-21-

Accordingly, I recommend finding that under the residual functional analysis set forth by the ALJ and recounted above, the ALJ was not required to obtain the testimony of a vocational expert in this case.[115] Therefore, under the applicable standards, sufficient evidence supports the determination of the ALJ at step five that Goble was not disabled and was capable of performing unskilled sedentary work which exists in sufficient numbers in the national economy.

## Conclusion

For the above reasons, I recommend that the final decision of the Commissioner denying benefits in this case be affirmed.

Dated:   October 7, 2011                              s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[116]

---

[115] ECF # 19 at 18 (citing AR 01-1(3).

[116] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-22-