PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES J. GOBLE | ) | CASE NO. 1:10CV01661 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** |

Before the Court is Plaintiff Charles J. Goble's ("Goble") objection to the Report and

Recommendation of Magistrate Judge William H. Baughman, Jr. (ECF No. 24) recommending

that the Court affirm the Commissioner of the Social Security Administration's decision denying

Goble's application for Supplemental Security Income.  ECF No. 25.  Counsel for the

Commissioner of the Social Security Administration (hereinafter "the Commissioner") requests

that the Court adopt the Report and Recommendation.  ECF No. 26.

As explained below, the Court affirms the Commissioner's decision denying benefits to

Goble and adopts the Magistrate Judge's Report and Recommendation, to the extent it is not

consistent with this Memorandum of Opinion and Order.  Goble's objections are overruled.

## I.  Background

Goble filed an application for Supplemental Security Income[1] on March 19, 2007 with an

---

[1]  The Report and Recommendation initially and mistakenly, on page 1, states that Goble
was denied Disability Insurance Benefits.  ECF No. 24 at 1.  Later, the Report correctly refers to
Goble's application for Supplemental Security Income.  ECF No. 24 at 2.

(1:10CV01661)

alleged disability date of August 2, 2005.  ECF No. 11-5 at 2; (Tr. 63).  Goble, a former

mechanic, alleged disability due to back injury, arthritis, spondylotisthesis, high blood pressure,

depression and anxiety.  ECF No. 11-6 at 6; (Tr. 71-78).  The Administrative Law Judge ("ALJ")

denied Goble's claim initially and upon reconsideration.  ECF No. 11-2 at 13.  Goble filed a

written request for a hearing which he failed to attend.  ECF No. 11-2 at 13; (Tr. 24).  Thereafter,

the ALJ denied Goble's claims.  ECF No. 11-2 at 12-24; (Tr. 9-23).  The Appeals Council denied

Goble's request for review, making the ALJ's decision final.  ECF No. 11-2 at 2-6; (Tr. 1-5).

 After the decision became final, Goble filed an appeal with this Court alleging the

following:

> 1.      Did the ALJ render a reviewable decision at step one?
>
> 2.      Did the ALJ's own findings that Plaintiff, Charles J. Goble, was restricted to 'light' work with, among other things, only occasional climbing of ramps and stairs require vocational-expert testimony at step five?
>
> 3.      Does substantial evidence support the ALJ's finding that Goble was not restricted to following one-and two-step job instructions?
>
> 4.      Does substantial evidence support the ALJ's evaluation of Goble's panic attacks?
>
> 5.      Does substantial evidence support the ALJ's evaluation of Goble's physical condition?

ECF No. 12.

 The Magistrate Judge issued a report recommending that the Court affirm the

Commissioner's decision denying Goble Supplemental Security Income benefits.  ECF No. 24 at

11-22.  Goble objected on several bases and, overall, asserted that the Magistrate Judge

2

(1:10CV01661)

erroneously affirmed the ALJ's findings.  ECF No. 25.  For the reasons given herein, the

Commissioner's decision is affirmed and the Magistrate Judge's Report and Recommendation is

adopted to the extent it is not inconsistent with this opinion.

## II.  Legal Standard

### 1.  Standard of Review

A district court is required to conduct a *de novo* review of the claimant's objections to a

report and recommendation.  28 U.S.C. § 636(b)(1).  A final decision of the Social Security

Commissioner made by an ALJ is, however, not reviewed *de novo*.  Rather, a district court is

limited to examining the entire administrative record to determine whether the ALJ's decision is

"supported by substantial evidence and was made pursuant to proper legal standards."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Substantial evidence is evidence that a "reasonable mind might accept as adequate to

support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation

omitted).  The substantial evidence standard requires more than a scintilla, but less than a

preponderance of the evidence.  *Id*.  In deciding whether substantial evidence supports the ALJ's

decision, a court should not try to resolve conflicts in evidence or decide questions of credibility.

*Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  Nor should a district court focus or base

its decision on a single piece of evidence.  Instead, a court must consider the record taken as a

whole.  *See Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980).  The district court may,

however, look into any evidence in the record, regardless of whether it has been cited by the ALJ.

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

3

(1:10CV01661)

When substantial evidence supports the ALJ's decision, a court may not reverse, even if the court would have made a different decision than the ALJ made.  *Siterlet v. Sec. of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  It is a "well-established rule, however, that an agency's  action may not be upheld on grounds other than those relied on by the agency." *National R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 420 (1992).  A reviewing court is powerless to affirm an agency decision where the grounds communicated by the agency are inadequate or improper, or fail to articulate the grounds for the decision. *Burlington Truck Lines v. U.S.*, 371 U.S. 156, 169 (1962) (describing this tenet as a "simple but fundamental rule of administrative law"); *see also Berryhill v. Shalala*, Case No. 92-5876, 1993 WL 361792, at *7 (6th Cir. Sep. 16, 1993) (applying this rule in the Social Security context). Further, "even if supported by substantial evidence, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotation omitted).

### 2.    Standard for Establishing Disability

To establish disability under the Social Security Act, a claimant must show that he is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national

4

(1:10CV01661)

economy.  *Id*.

         To determine whether a claimant is disabled, Agency regulations provide a five-step

sequential evaluation.  If a claimant can be found disabled at any step of the sequential

evaluation, the review ends.  20 C.F.R. § 404.1520(a); *McClanahan v. Comm'r of Soc. Sec.*, 474

*F.3d 830, 833 (6th Cir. 2006)*.  During Step One, the ALJ determines whether the claimant is

engaged in a "substantial gainful activity" at the time he seeks disability benefits.  *Colvin v.

Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  In Step Two, the plaintiff must show that he

"suffers from a severe impairment in order to warrant a finding of disability."  *Id*. (internal

quotations omitted).  In Step Three of the analysis, the ALJ determines whether the claimant has

an impairment that satisfies the criteria of an impairment listed in Appendix 1 and that also meets

the durational requirement.  *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1.  A claimant is

deemed disabled if he has an impairment that meets both the listing and the duration requirement.

 Before considering the fourth step, the ALJ must determine the claimant's Residual Functional

Capacity ("RFC"), *i.e.*, the claimant's ability to perform physical and mental work on a sustained

basis despite limitations from impairments.  At Step Four, the ALJ considers whether the

claimant's RFC permits him to perform past relevant work.  The claimant bears the burden of

proof at Steps One through Four.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.

2004).  At Step Five, however, the burden shifts to the Commissioner to identify a significant

number of jobs in the economy that fit the claimant's residual functional capacity and vocational

profile.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

5

(1:10CV01661)

### III.  Analysis

As earlier indicated, Goble has raised several objections to the Magistrate Judge's Report and Recommendation.  The first item in the pleading styled "Plaintiff's Objections to Report and Recommendation" is not, however, a true objection.  Rather, Goble states that "The Magistrate Judge *Correctly* Did Not Recommend Affirmance of Any Step-One Decision of Non-Disability." ECF No. 25 at 1.  Goble, in an attempt to preserve an issue that may be considered waived if not addressed, posits that the ALJ "rendered an ambiguous step-one finding[,]" but does not object or pose a position contrary to any portion of the Magistrate Judge's discussion regarding that finding.  ECF No. 25 at 2.  After explaining that the Magistrate Judge "*correctly* did not recommend affirmance of non-disability at step one, " Goble concludes the ALJ's finding is unreviewable.  ECF No. 25 at 2 (emphasis in original).

Goble's discussion is more academic than substantive.  Because the ALJ proceeded to Step Two, and beyond, he obviously did not disqualify, *i.e.* find Goble not disabled, at Step One. 20 C.F.R. § 404.1520(a); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (review ends at any step of the sequential evaluation if a claimant can be found disabled or not). Because Goble's comments about the Magistrate Judge's report regarding Step One is not an objection, it is, therefore, not subject to the *de novo* review required by Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636.

(1:10CV01661)

## A.  Rejection of Medical Opinions

In a pleading that is difficult to understand, Goble objects to the ALJ's rejection of the

opinions of the Agency's psychologists.  ECF No. 25 at 3.  He writes:

> Examining psychologist Dr. Smith, non-examining psychologist Dr. Tishler, and
> nonexamining psychologist Dr. Meyer all restricted Goble to following one- and
> two-step job instructions. (R. at 183 (Dr. Smith); id. at 186 (Dr. Tishler); id. at
> 210 (Dr. Meyer adopting Dr. Tishler's opinions).) Goble objects to the Magistrate
> Judge's recommendation to affirm the ALJ's rejection of the consistent opinions
> of the Agency's own psychologists. (Compare Report at 17 withPl.'s Br. at
> 11-16.)

Goble then specifies five sub-bases for objecting the MJ's ruling, concluding with the Magistrate

Judge's failure to conduct a harmless error analysis.  None of these arguments have merit.

At the threshold, it is important to note certain matters.  First, of the three doctors

Plaintiff refers to, only two–Drs. Smith and Tischler–issued separate opinions; Dr. Meyer

adopted the opinion of Tischler, therefore, it is not necessary to refer to Dr. Meyers' opinion

separately, in this instance.  (R. 210.)  Second, the ALJ did not "reject" the opinions of these

doctors.  Rather, the ALJ gave the opinions of these doctors less than full weight and adequately

stated his reasons for doing so.  (R.20.)

As agency regulations and Sixth Circuit case law provide that "[t]he ALJ, not a physician,

is assigned the responsibility of determining a claimant's RFC based on the evidence as a

whole."  *Henderson v. Comm'r of Soc. Sec*., Case No. 08-2080, 2010 WL 750222, at *2 (N.D.

Ohio Mar. 1, 2010) (citing 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.946(c); *Webb v. Comm'r

of Soc. Sec*., 368 F.3d 629, 633 (6th Cir. 2004); Social Security Ruling (SSR) 96-5p; SSR 96-8p).

The ALJ's determination of a claimant's RFC is a legal decision rather than a medical one.  *See*

(1:10CV01661)

20 C.F.R. § 404.1527(e); SSR 96-5p, 61 Fed. Reg. 34471, 34474 (1996).  As such, the final

responsibility for deciding issues such as RFC–the work Goble is capable of performing–is

reserved to the Commissioner.  20 C.F.R. § 404.1546.  In accordance with this legal precedence,

the ALJ gave adequate reasons for giving less than full weight to the opinions of Agency

psychologists.  (Tr. 18, 20).  *See* 20 C.F.R. § 416.927(d)(2)(ii), (d)(3), (d)(4), (d)(5) (nature and

extent of the relationship, supportability, consistency, and specialization are relevant in the

weighing of an opinion).

The Court finds that the ALJ conducted a meaningful review and reasonably punctuated

shortcomings in Dr. Smith's opinion, causing the ALJ to attribute it "little weight."  For example

Dr. Smith's references to Goble's subjective reports of back pain which were medical issues

beyond Dr. Smith's area of expertise–psychology.  ECF No. 11-2 at 29; (Tr. 20; 182-83).  The

ALJ also appropriately articulated why he found  Dr. Smith's mental status examination findings

were normal or unremarkable other than those regarding rapid and sometimes slurred speech.[2]

ECF No. 11-2 at 19; (Tr. 18, 182).  This finding is consistent with Dr. Smith's diagnosis of

adjustment disorder, rather than other intellectual deficits.  (Tr. 183).  The ALJ gave Dr.

Tischler's opinion the same close consideration and, while giving it some weight, found no more

than mild social functioning based largely upon Goble's wide range of daily activities.

The Court is not persuaded that the ALJ misstated the factual basis for any doctor's

opinions, including Dr. Smith's opinion.  In fact, while Goble complains vociferously of the

_____

[2]  Goble's attributed his inarticulation to missing teeth and a "southern accent." (TR.
183.)

8

(1:10CV01661)

ALJ's categorization as "speculative" Dr. Smith's assessment of Goble's problems interacting

with others, the ALJ's reference is supported by the record. (TR. 183: Dr. Smith opined that

Goble "may have some trouble dealing with people . . ."). The Court's review of the record as a

whole supports the ALJ's decision, including his interpretation of Dr. Smith and Tichler's

opinions and the weight assigned. Thus, any error is harmless. *See e.g. Heston v. Comm'r of*

*Soc. Sec.*, 245 F.3d 528 at 535 (6th Cir. 2001).

Goble's objections are overruled, as the ALJ's decision is supported by substantial

evidence in the record and not contrary to the Agency's own rule.

### B. Error Regarding Goble's Panic Attacks

Goble argues that the ALJ erroneously stated that "[t]he record shows that he did not

complain of panic attacks prior to November 2008[,]" and that "there is no evidence that Mr.

Goble ever required emergency care for psychological issues." ECF No. 25 at 6; (Tr. 19). By

way of his objections, Goble argues that the Magistrate Judge applied an incorrect legal standard

when recommending that the ALJ's factual errors regarding Goble's panic attacks were harmless

on the grounds that Goble's mental limitations, among others, do not "preclude all levels of basic

work related activity." ECF No. 25 at 7. Goble objects to the Magistrate Judge's

recommendation to affirm the ALJ's reasoning because there was "'no evidence' that the ALJ's

factual errors were 'material.'" ECF No. 25 at 6. The Court disagrees.

Agency regulations instruct an ALJ to thoroughly consider medical opinions from a

disability claimant's treating physicians. Such opinions receive "controlling weight" unless the

ALJ finds them unsupported or "'inconsistent with the other substantial evidence in [the] case

9

(1:10CV01661)

record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (alteration in

original) (quoting 20 C.F.R. § 404.1527(d)(2)). When a treating-source opinion does not deserve

"controlling weight," the ALJ still considers the opinion in accordance with certain factors. *See*

20 C.F.R. § 404.1527(d)(2). ALJ written decisions must ultimately contain "good reasons . . . for

the weight [they] give" the opinion, and their explanation "must be sufficiently specific to make

clear to any subsequent reviewers the weight [given] to the treating source's medical opinion and

the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

  If an ALJ's decision does not follow the Agency's procedural rules, the final Agency

decision is affirmed only if the error is harmless. *See Wilson*, 378 F.3d at 546-47. An error is

harmless if an ALJ's mistake as to a fact on the record does not justify overturning a decision that

is otherwise supported by substantial evidence. *Hawkins v. Sec'y of Health and Human Servs.*,

Case No. 89-1439, 1989 WL 153169, at *12 (6th Cir. Dec. 18, 1989).

  The Magistrate Judge recommends that the ALJ's misstatements constitute harmless error

because appropriate facts were applied in reaching the ultimate legal conclusions and such

conclusions were supported by the overall record. ECF No. 24 at 17-19. In explaining his

reasoning, the Magistrate Judge wrote:

> Goble contends that the ALJ overlooked or misstated evidence concerning
> Goble's panic attacks. I recommend finding that the ALJ's conclusions here–that
> certain limitations exist, but do not preclude all levels of basic work related
> activity–are supported by substantial evidence.
>
> In that regard, I note that while the ALJ has recounted the evidence such that he
> does acknowledge the medical reality, he is also aware of the limits of such an
> acknowledgment. Notwithstanding Goble's complaints, the record discloses
> conservative treatment for the complaints of anxiety which did not include a
> referral to a psychiatrist by Dr. Damm, Goble's treating physician. Further, the

(1:10CV01661)

> record, as discussed by the ALJ, also discloses Goble was regularly able to
> perform a wide range of activities inconsistent with Goble's claims regarding
> anxiety and panic attacks.  While Goble argues strenuously that the ALJ made
> several factual errors fatal to the final finding such as misstating when Goble first
> reported panic attacks and whether he ever received emergency care for such an
> attack, even assuming that Goble is correct, there is no evidence that these errors
> were material.
>
> Specifically, the ALJ's determination concerning panic attacks and anxiety rests
> on his findings that Goble was not receiving ongoing mental health treatment and
> that Goble's activities are not consistent with debilitating panic attacks or anxiety.
> As such, I recommend finding that the ALJ's decision is supported by substantial
> evidence.

ECF No. 24 at 17-19.

Contrary to Goble's contentions, the ALJ's misstatement of the record–stating that it

contained no evidence of panic attacks prior to November 2008 or receipt of emergency care–is

harmless.  The evidence clearly indicates that Goble received anxiety treatment, albeit

conservative and not ongoing, and engaged in activities inconsistent with claims regarding panic

attacks.  Despite the misstatement, the ALJ acknowledged Goble's panic attacks and proceeded

to reasonably evaluate them.  (Tr. 17-19); *see also* ECF No. 19 at 16 ("Plaintiff complained of a

panic attack in the emergency room in February 2006, but he also exhibited normal mood and

affect, and there was nothing in the records indicating that he required intervention."); (Tr. 131).

The ALJ's misstatement does not eviscerate the substantial evidence that supports the ALJ's

finding.  *See Brunson v. Astrue*, 387 Fed. Appx. 459 (5th Cir. 2010) (explaining that an ALJ's

misstatement of the record in social security disability benefits case, in stating that it contained

no evidence of any ongoing psychiatric treatment and no evidence that claimant was prescribed

psychotropic medication during the period in question, was harmless).

(1:10CV01661)

In summary, the ALJ's determination was supported by substantial evidence in the record and in accord with Agency regulations.[3]  The ALJ's misstatement of fact does not justify a remand.  His ultimate findings were clearly articulated and, apart from misstating when the panic attacks were first reported and the emergency care, the ALJ gave adequate consideration to the existence and effect of Goble's panic attacks.  Goble has not been prejudiced by the misstatements or denied a substantial right.

### C.  Onset Date

Goble objects to the magistrate judge's "implicit recommendation" as to the ALJ's questioning of Goble's alleged onset disability date of August 2, 2005.  ECF No. 25 at 10.  The ALJ states that "[t]he record does not indicate any reason why Mr. Goble selected August 2, 2005 as his alleged disability onset date.  There is no record of any event, injury or medical worsening on or about that date."  ECF No. 11-2 at 20; (Tr. 19).  Goble emphasizes that the record supports his alleged onset disability date as August 2, 2005 because it was the date of a motor vehicle accident, and argues that the Court should remand the case for proper evaluation because "[t]here was no mystery as to why Goble specified his alleged onset date as August 2, 2005."  ECF No. 25 at 10.

Again, the basis for Goble's objection is confounding, given that there is no dispute that the ALJ (and Commissioner) as well as the Magistrate Judge all adopted Goble's alleged onset

---

[3]  Goble, in a less than clear fashion, argues that the Magistrate Judge applied an incorrect definition of disability.  This argument is overreaching at best, the Magistrate Judge acknowledged the ALJ's articulation of Goble's limitations and found them supported by the record. Goble's objection is overruled.

(1:10CV01661)

disability date as August 2, 2005.  ECF Nos. 19 at 1; 11-2 at 13; (Tr. 63); ECF No. 24 at 2.

The Sixth Circuit has held that "[t]he filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object."  *Cole v. Yukins*, 7 Fed.Appx. 354, 356 (6th Cir. 2001).  Goble's vague attempt to capitalize on the ALJ's failure to understand the significance of August 2, 2005 is not well taken. He strains the point to argue that the ALJ's misunderstanding of the reason for that onset date resulted in the ALJ's decision being unsupported by substantial evidence.  Nonsense.

Goble has not shown any prejudice or deprivation of a substantial right associated with the ALJ's arguable blind adoption of his proffered onset date.  While the record does associate Goble's proffered onset date with an automobile accident, the ALJ's confusion is understandable given Goble's "'spotty work history' even prior to that date."  Tr. 19.  The Court carefully reviewed the citations Goble relies upon to associate August 2, 2005--his onset date--with the car accident.  ECF No. 25 at n. 4.  Even Goble's counsel's statement that Goble "hasn't really worked since [the] 2005 [car accident]" is, at best, only a lukewarm endorsement of the proffered onset date.  Tr. 28.  The only true confusion on this point is derived from Goble's objection.  No purpose would be served by remanding for the ALJ to explicitly address the reason for the alleged onset date.  *Cf. Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (citation omitted) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result."). There is no prejudice and, as importantly, no harm resulting from the ALJ's incorrect statement. The objection is overruled.

13

(1:10CV01661)

### D.  Treating Physician's Medical Opinion

Goble challenges the merits of the ALJ's "good reasons" for rejecting Dr. William

Damm's medical opinion, deeming them unsupported by substantial evidence.  ECF No. 25 at 8-

10.  Specifically, Goble contends that one of the ALJ's reasons for rejecting Dr. Damm's medical

opinion erroneously relied on the negative inference that "no treating source has ever

documented, in actual treatment notes, placing any specific restriction on Mr. Goble's activities

for any medical reason."  ECF No. 25 at 8; (Tr. 21).

The agency's treating-source rule permits an ALJ to reject a treating source's opinion if

substantial evidence in the record contradicts it.  20 C.F.R. § 404.1527(d)(2).  Substantial

evidence "'means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305

U.S. 197, 229 (1938)).  When substantial evidence supports an ALJ's decision, that decision is

reaffirmed even if the reviewing court would have decided differently, *see Kinsella v. Schweiker*,

708 F.2d 1058, 1059 (6th Cir.1983), and even if substantial evidence also supports the opposite

conclusion.  *See Mullen*, 800 F.2d at 545 (en banc).

An additional procedural requirement of the treating-source rule is that the ALJ, in

discounting a treating source's opinion, must provide "good reasons" that are "sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight."  SSR 96-2p; *Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541 (6th Cir. 2004).  As importantly, the "good reasons" rule "'exists, in part, to

let claimants understand the disposition of their cases,' particularly in situations where a claimant

14

(1:10CV01661)

knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency decision is supplied.'" *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d. Cir.1999)).  An ALJ's failure to follow this requirement of providing good reasons "for explaining precisely how those reasons affected the weight accorded the [physician's] opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Rogers*, 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Magistrate Judge recommends that the ALJ's credibility determination with respect to Dr. Damm is supported by substantial evidence and in accordance with the treating-source rule.  The magistrate judge explains the following:

> As noted, Goble maintains that the ALJ had no good reason for diminishing the weight given to treating physician Dr. Damm's opinions as to Goble's physical limitations.  In particular, Goble argues that the ALJ should not have relied on a 'negative inference' from the lack of any specific physical restrictions in Dr. Damm's treatment notes.
>
> However, as stated by the Commissioner, such an argument 'mischaracterizes' the reasons for the ALJ reducing the weight given to Dr. Damm's opinions.  Rather, as applies specifically to the physical limitations findings, the ALJ gave Dr. Damm's opinion as to Goble's physical limitations 'little weight' for a number of reasons:  (1) inconsistency with the overall record; (2) not supported by objective testing which does not show any spinal abnormality requiring surgery; (3) not supported by 'clinical signs,' which are 'negative for any significant neurologic abnormalities;' (4) unsupported by a 'relatively conservative' treatment history; and only then (5) because it was not supported by any treatment notes placing actual restrictions on Goble's activities.
>
> Based on the foregoing, I recommend finding that the ALJ's determination in this respect is supported by substantial evidence. Consistent with the requirements of *Wilson*, the ALJ here clearly articulated the reasons for not adopting the opinions of the treating physician as to any physical limitations, and further grounded his eventual finding in Goble's own daily activities.  As such, I recommend that the

15

(1:10CV01661)

finding is supported by substantial evidence.

ECF No. 24 at 19-20.

Dr. Damm's failure to have documented, in treatment notes, restrictions on Goble's activities is only one of at least five reasons given for not according controlling weight to the treating physician's opinion.  The ALJ's articulation of specific conflicts among Dr. Damm's opinion and objective medical evidence, the opinions of other physicians, and Goble's daily activities and treatment is supported by substantial evidence.  In discounting Dr. Damm's findings, the ALJ specified that Dr. Damm's opinion is unsupported by:  (1) objective testing that does not indicate spinal abnormality warranting surgery (Tr. 21, 157, 222);[4] (2) clinical signs that are negative for any significant neurologic abnormalities (Tr. 21, 231, 235); (3) the treatment history illustrating that only relatively conservative treatment has been offered, narcotics were not warranted, and the prescribed narcotics were being abused or diverted (Tr. 21, 137, 150);[5] and (4) Goble's wide-range of daily activities such as fishing, which includes prolonged sitting and standing (Tr. 21, 182).  Because Dr. Damm's opinion regarding the certain extent of Goble's limitations were not well-supported and, as indicated above, inconsistent with other supported evidence, the ALJ was not required to award Dr. Damm's opinion controlling weight, regardless

---

[4] Dr. Damm's assessment of Goble's spine stated that the "[i]nspection reveals no abnormality.  Lumbar spine, loweris tender to palpation.  Positive for tenderness."  (Tr. 222) Dr. Domingo Gonzalez, a neurosurgeon, reported that the objective testing does not warrant surgery.  (Tr. 222).

[5] Dr. Priti Nair, pain management specialist, strongly suspected either substance abuse or diversion.  (Tr. 17, 150).  Dr. Gonzalez advised Goble to "manage himself with over-the-counter antinflamatory medications," and "did not prescribe any analgesics."  (Tr. 17, 137).

(1:10CV01661)

of the negative inference.  The ALJ paid proper deference to Dr. Damm's role as a treating physician and, in doing so, considered Dr. Damm's opinion and, ultimately, assigned it the weight it could bear based upon the non-contradicting evidence in the record.  (Tr. 21).  As required, the ALJ specified his reasons for according Dr. Damm's opinions less than controlling weight.  The ALJ's determinations are supported by objective medical evidence and his reasons for discounting the treating physician's opinion are sufficiently articulated, making Goble fully aware of the reasons for the Agency decision.  Goble's objection is denied.

### D.  Vocational Expert

Goble argues that the Magistrate Judge erroneously affirmed that the ALJ was not required to obtain vocational expert testimony in order to demonstrate, at Step Five of the sequential evaluation, the existence of work in the national economy that Goble could perform. ECF No. 25 at 11.  Goble contends that the ALJ was required to obtain a vocational expert at Step Five because:  (1) "the ALJ's own restriction of Goble to occasional ramp and stair climbing, in the context of 'light' work, required vocational-expert testimony at step five[;]" and (2) "Goble's additional mental limitations that the ALJ erroneously failed to recognize required vocational-expert testimony at step five."  ECF No. 25 at 11.  Goble argues that the magistrate judge's recommendation that Goble was not disabled because he could perform sedentary work is an improper post hoc rationalization.  ECF No. 25 at 11.

In making the determination at Step Five, the Commissioner can carry the burden by the use of the grid or by expert testimony.  In many cases, use of the grid may direct a finding of disabled or not disabled based on the claimant's age, education, and transferable work skills.  20

(1:10CV01661)

C.F.R. § 416.969; *Born v. Sec'y of Health & Human Servs*., 923 F.2d 1168, 1173 (6th Cir. 1990).

If any of the findings of fact do not exactly coincide with the grid's definitions, the grid is used

only as a guide. *Kirk v. Sec'y of Health and Human Servs*., 667 F.2d 524, 528 (6th Cir. 1981);

*see also* 20 C.F.R. § 416.969.  In cases where the grid is not used to direct a finding of "disabled"

or "not disabled," expert testimony is required to satisfy the Commissioner's burden of proof at

Step Five.  *Kirk*, 667 F.2d at 531.

Further, in cases where the claimant suffers from nonexertional limitations in addition to

exertional limitations, the use of the grid may or may not be appropriate.  The regulations

recognize that a claimant may suffer from both exertional and nonexertional limitations.[6]  *See* 20

C.F.R. § 416.969a.  The use of the grid to help make a disability determination for a claimant

who has both exertional and nonexertional limitations has been approved by the Sixth Circuit

under certain circumstances, *i.e.* if the nonexertional limitation does not significantly limit the

ability to do a full range of work at the appropriate RFC level.  *See Cole v. Sec'y of Health &*

*Human Servs*., 820 F.2d 768, 771-72 (6th Cir.1987); *Kirk*, 667 F.2d at 528; *see also* 20 C.F.R. §

416.969a(d).  If, however, the claimant's nonexertional impairment is found to significantly limit

the ability to do a full range of work at the designated level, then directly applying the grid is

---

[6]  The regulations define "nonexertional" limitations as "limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, [which] affect only your ability to meet the demands of jobs other than the strength demands [sitting, standing, walking, lifting, carrying, pushing, and pulling]."  20 C .F.R. § 416.969a(c)(1).  Examples of nonexertional limitations include difficulty functioning because of nervousness, anxiety, or depression; difficulty in maintaining attention or concentration; difficulty with understanding or remembering detailed instructions; and "difficulty performing the manipulative or postural functions such as reaching, handling, stooping, climbing, crawling, or crouching."  *Id*.

18

(1:10CV01661)

inappropriate and it may only be used as a framework.  *Cole*, 820 F.2d at 772; *Kirk*, 667 F.2d at 528-29.  In that situation, expert testimony is needed to assist the ALJ in making a determination at Step Five.  *Damron v. Sec'y of Health & Human Servs*., 778 F.2d 279, 282 (6th Cir. 1985); *Kirk*, 667 F.2d at 531.  A mere allegation of a nonexertional limitation is not sufficient to preclude the use of the grid; instead, it must be determined that it is a severe nonexertional impairment.  *Cole*, 820 F.2d at 772.  If the ALJ discredits a claimant's complaints of nonexertional impairments, the ALJ is not required to consult with a vocational expert and may properly rely on the grid.  *Buress v. Sec'y of Health & Human Servs*., 835 F.2d 139, 142 (6th Cir. 1987).

The Magistrate Judge recommends finding that, under the residual functional analysis, the ALJ was not required to obtain the testimony of a vocational expert in this case; and, under the applicable standards, Goble was capable of performing unskilled sedentary work which exists in sufficient numbers in the national economy.  ECF No. 24 at 22.  In support, the magistrate judge stated the following:

> In this case, the Commissioner argues that the ALJ had the discretion to obtain the testimony of a vocational expert because the nonexertional limitations on Goble, as well as the limitation as to climbing of ramps and stairs, had little to no effect on the occupational base of unskilled light work.  Moreover, the Commissioner maintains, even if Goble would be limited to sedentary work due to his difficulty walking up and down stairs, the Medical-Vocational Guidelines would still have supported a finding that he was not disabled.
>
> As noted, in this case the ALJ found that Goble has some physical restrictions that preclude climbing ladders, ropes and scaffolds, and limit him to 'occasionally' climbing ramps and stairs.  Further, the ALJ found Goble has the mental restriction of being limited to tasks that can be learned in a short demonstration or within 30 days. Finally, the ALJ made these restrictions within the context finding Goble being able 'to perform a range' of light work.

19

(1:10CV01661)

> The Commissioner implicitly concedes that neither SSR 83-14 nor SSR 85-15 directly control in the present case, but are merely 'instructive' as to whether Goble's restrictions do or do not significantly diminish the base of work available. However, as noted, the Commissioner ultimately contends that even if Goble had been restricted to sedentary work, he would still necessarily be found not disabled without the need for the testimony of a vocational expert.

> In that regard I note first, as did the ALJ here, that Goble's physical restrictions as to ascending and descending scaffolding, poles and ropes 'have very little effect on the unskilled light occupation base.'  Moreover, Goble's restriction to occupations requiring no more than a short demonstration to learn further conforms to the rubric for unskilled work which defines such work as performing 'simple duties that can be learned on the job in a short period of time.'

ECF No. 24 at 20-22.

Contrary to Goble's contention, the ALJ was not required to obtain vocational expert testimony at Step Five because the ALJ found that Goble's nonexertional limitations in the RFC had "little or no effect on the occupational base of unskilled light work."  ECF No. 11-2 at 23; (Tr. 22).  Stated differently, the ALJ found that Goble's nonexertional impairments did not significantly limit his ability to perform unskilled light work, and thus vocational expert testimony is discretionary.  *See Cole*, 820 F.2d at 772; *Kirk*, 667 F.2d at 528-29.  The ALJ further found that the "fact that Mr. Goble has limitations with climbing is not significant pursuant to Social Security Rulings 83-14 and 85-15."  ECF No. 11-2 at 23; (Tr. 22).  According to SSR 83-14, the limitations on climbing ladders, ropes, poles, and scaffolds do not significantly erode the occupational base of light work.  *See* SSR 83-14, 1983 WL 31254, at *2, *5; ECF No.19 at 18-19.  Further, SSR 85-15 explains that limitations on climbing ramps or stairs would not have a significant impact on the "broad world of work."  SSR 85-15, 1985 WL 56857, at *6; ECF No. 19 at 19.  Accordingly, the ALJ's decision and the Magistrate Judge's recommendation that

20

(1:10CV01661)

Goble did not suffer from any nonexertional limitations that would significantly erode the

occupational base of unskilled light work and preclude the use of the grid to determine disability

are supported by the record and in accordance with the proper legal standards.  *See Rogers*, 486

F.3d at 241.

Finally, Goble's argument that the Magistrate Judge provided an improper *post hoc*

rationalization by stating that Goble "was capable of performing unskilled sedentary work which

exists in sufficient number in the national economy" is unpersuasive.  The Court need not

address Goble's alleged *post hoc* rationalization argument when, having conducted its own

evaluation, the Court finds that the ALJ's determination and the recommendation are supported

by substantial evidence.  *See Pasco v. Comm'r of Soc. Sec.*, 137 Fed.Appx. 828, 847 (6th Cir.

2005) ("Finally, Pasco alleges that the Magistrate Judge and the district court impermissibly used

*post[]hoc* rationalizations to uphold the ALJ's decision and did not properly consider all of her

assignments of error.  Having conducted our own review of the ALJ's decision and found it

supported by substantial evidence, we need not address these alleged errors."); *see also Counter*

*v. Astrue*, Case No. 1:09CV1099, 2010 WL 2403140, at *4 (N.D. Ohio June 11, 2010).

Alternatively, even if the Magistrate Judge erred by providing an improper *post hoc*

rationalization, such error is harmless because the magistrate judge reached the correct result.

*Beinlich v. Comm'r of Soc. Sec.*, Case No. 08-4500, 2009 WL 2877930, at *4 (6th Cir. Sept. 9,

2009).  Goble's objection is denied.

21

(1:10CV01661)

### III.  Conclusion

For the foregoing reasons, the Court affirms the Commissioner of Social Security's

decision denying Goble's application for benefits.  To the extent it is not inconsistent with this

Opinion, the Report and Recommendation (ECF No. 24) is adopted.

IT IS SO ORDERED.


March 9, 2012                                              /s/ Benita Y. Pearson
Date                                                              Benita Y. Pearson
                                                                   United States District Judge


22